The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 54 year-old married female with three grown children and was herself an honest, hard-working employee at the time of the admittedly compensable disabling back injury giving rise to her initial claim in I.C. File No. 301575. She obtained her GED or high school equivalency certificate in the late 1960's after initially finishing the eleventh grade and marrying, but has not since received any type of further training or education. Her other prior work experience has involved farming for twenty years, inspecting lamps for a lamp company for two years in the early 60's, which involved working on an assembly line inspecting the same lamps and then packing them in boxes and working as a matron for one and a half years for the Sampson County Sheriff's Department. In 1977 plaintiff became employed on the kill floor of defendant-employer's meat processing plant and was assigned to a standing assembly line job using a knife to clean the hair, fat and other undesirable material from hog snouts delivered to her work station by conveyor in large pans. During the fifteen years she worked for defendant-employer prior to her disabling December 8, 1992 back injury, plaintiff rotated between the hog snout cleaning job and another standing assembly line job on the kill floor removing gall bladders from inedible livers but because of her permanent back injury, she is unable to return to either job.
2. On December 8, 1992 plaintiff sustained an admittedly compensable back injury when she stepped on a piece of fat on the floor and slipped.
3. On the following day, plaintiff was seen by her family physician, Dr. John B. Smith, who provided a conservative course of treatment, but when her condition did not improve he referred plaintiff to the Triangle Spine and Back Care Center in Raleigh. After further attempts at conservative treatment failed, Dr. Lestini of the Triangle Spine and Back Care Center performed decompressive laminectomies and instrumented spinal fusions at the L4-L5 and L5-S-1 levels of plaintiff's lumbosacral spine, which were not only designed to free up the nerve roots, but stabilize the unstable disks at both levels.
4. Although in 1978 plaintiff had undergone a lumbar laminectomy as a result of sustaining a disk herniation at the L5-S1 level of her lumbosacral spine, she subsequently recovered from that injury and did not experience any further significant back problems until re-injuring her back on December 8, 1992.
5. Plaintiff's condition initially improved following surgery; however, by September 13, 1992, she had contracted the admittedly compensable occupational disease brucellosis giving rise to her concurrent claim in I.C. File No. 403674 manifested by symptoms of fever, night sweats, headaches, and loss of appetite further complicating her recovery and as a result Dr. Lestini referred her to Dr. Bruce L. Gilliam, an infectious disease specialist associated with the University of North Carolina's Memorial Hospital in Chapel Hill, who continued to follow and treat the disease to the date of the hearing.
6. As a result of her occupational disease, plaintiff has not only required several courses of streptomycin, as well as long-term antibiotics, which in large part were administered by Dr. Smith at Dr. Gilliam's direction, but her condition continues to require monitoring in the form of both CT scans and blood testing because of the resulting risk of bone infection. In particular, there is a risk of bone infection involving the instrumentation, or foreign material from her back surgery, that could serve as a nidus for an infection of the brucella bacteria that remains in her blood stream which would not as effectively be attacked by the body's immune system as it would be if the nidus of the infection were in part of the living body where the white blood cells could attack it. Were the instrumentation in plaintiff's back to be the nidus of a bone infection the only way to clear it up would be to remove the hardware that stabilizes plaintiff's back and the results would be devastating. For this reason her condition still needs to be monitored, including regular testing of her blood, as well as CAT scans, which are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with her occupational disease. There must be continuation of the service by monitoring plaintiff's condition to ensure that she does not develop a flare-up of her brucellosis and/or a potentially devastating bone infection with the nidus at the site of the instrumentated fusion she underwent as a result of her concurrent back injury.
7. By December 29, 1994, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the same back injury and corrective surgery necessitated thereby, at which time she retained a forty percent permanent partial disability of the back as a result of her December 8, 1992 back injury. Because of the same permanent back injury, she is unable to return to her regular assembly line job for defendant-employer.
8. From a structural standpoint, after undergoing the involved instrumented spinal fusion designed to relieve the nerve root compressions at the affected levels and stabilize the unstablized disk, plaintiff is only capable of light to sedentary work not requiring her to lift in excess of twenty pounds or bending or stooping and allowing for a change of bodily position every thirty minutes; however, this does not take into account the chronic incapacitating pain plaintiff continues to experience from her permanent back injury. As a result of chronic incapacitating pain plaintiff is severely limited in all of her activities.
9. Defendant-employer has attempted to provide the type of suitable alternate lighter work required by plaintiff's permanent back injury in the form of jobs including bacon labeling, putting plastic bags in boxes, and as a work-order clerk. She has attempted to perform each of these jobs, but has been unable because of her chronic incapacitating pain from the involved back injury.
Initially, plaintiff attempted to return to the bacon labeling job on a four hour a day basis on three separate occasions: July 18, 19, 21, 1994; October 31, 1994 and November 9 10, 1994; and January 3 4, 1995, but was unable to do the job because of her chronic incapacitating pain. On one occasion, May 30 and June 1, 1995, plaintiff attempted to return to the job putting plastic bags in boxes, but was again forced to stop working because of incapacitating pain. She last attempted to return to work as a work order clerk on September 12, 1995 and after only working several hours her pain was so severe she was crying and had difficulty concentrating.
10. Plaintiff has already made a reasonable, but unsuccessful attempt to find the type of suitable alternate work required by her permanent back injury by attempting to perform the alternate lighter work defendant-employer attempted to provide her, which she was not even able to do on a part-time basis. Taking into account not only her age, education, background and work experience, as well as the structural limitations of her permanent back injury, but also her incapacitating pain, it would be futile for plaintiff to attempt to find work unless and until her chronic pain diminishes and/or she is better able to cope with it.
* * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Other than the reasonable, but unsuccessful attempts that she made to perform alternate lighter work on the following days: July 18, 1994, July 19, 1994, July 21, 1994, October 31, 1994, November 9, 1994, November 10, 1994, January 3, 1995, January 4, 1995, May 30, 1995, June 1, 1995 and September 12, 1995, plaintiff has remained totally disabled by her December 8, 1994 back injury since December 9, 1992 entitling her to compensation at a rate of $348.02 from December 9, 1992 to the hearing date before the Deputy Commissioner and continuing at the same rate so long as she remains totally disabled, subject to a credit for the compensation benefits that defendant-employer has continued to pay under the Industrial Commission's Award and less the eleven days when she unsuccessfully attempted to return to alternate lighter work.
2. To the extent the same is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the December 8, 1992 injury by accident, as well as her occupational disease brucellosis, including the disputed diagnostic CT scan prescribed by Dr. Gilliam in June of 1995 as well as the type of monitoring required because of her risk of a bone infection, including further CT scans and blood testing.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $348.02 per week from December 9, 1992 to the date of the hearing before the Deputy Commissioner and continuing at the same rate so long as she remains totally disabled, subject to a credit for the compensation benefits that defendant-employer has continued to pay under the Industrial Commission's original Award, less the eleven days in the interim when plaintiff made a reasonable, but unsuccessful attempt to return to the alternate lighter work required by her permanent back injury. Such compensation as has accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. For his fee, defendant-carrier shall continue forwarding every fourth check payable under this Award directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of both her December 8, 1992 back injury and her occupational disease brucellosis, when bills for the same have been approved pursuant to proper Industrial Commission procedure.
4. Defendants shall bear the cost, including an expert witness fee in the amount of $350.00 to Dr. John B. Smith, who appeared by way of deposition and gave expert medical testimony, and an expert witness fee in the amount of $175.00 to Thomas Baldwin, who appeared and gave by way of deposition and gave expert vocational testimony as well as the $600.00 expert witness fee previously awarded Dr. Lestini for his deposition testimony to the extent the same have not already been paid.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ THOMAS J. BOLCH COMMISSIONER